Darin W. Snyder (Cal. Bar No. 136003)
dsnyder@omm.com
Rui Li (Cal. Bar No. 320332)
rli@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: 415-984-8700
Facsimile: 415-984-8701

Xin-Yi Zhou (Cal. Bar No. 251969)
vzhou@omm.com
**O'MELVENY & MYERS LLP**
400 S. Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407

Hana Oh (Cal. Bar No. 300846)
hoh@omm.com
**O'MELVENY & MYERS LLP**
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: 949-823-6900
Facsimile: 949-823-6994

*Attorneys for Respondent Samsung Semiconductor, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: MOTION TO COMPEL COMPLIANCE WITH A SUBPOENA AD TESTIFICANDUM<br><br>LYNK LABS, INC.,<br><br>       Petitioner. | Misc. No. 5:23-mc-80018-VKD<br><br>**Noticed Hearing**: Feb. 28, 2023, 10:00AM<br>                  San Jose, Courtroom 2<br><br>**RESPONDENT SAMSUNG SEMICONDUCTOR, INC.'S OPPOSITION TO LYNK'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA AD TESTIFICANDUM AND CROSS-MOTION TO QUASH OR TRANSFER** |

## TABLE OF CONTENTS

| | Page |
|---|---|
| I.   Introduction | 1 |
| II.  Factual Background | 2 |
| III. Legal Standard | 3 |
|     A.   Motions to Compel or Quash Third-Party Subpoenas | 3 |
|     B.   Motion to Transfer | 4 |
| IV.  Argument | 5 |
|     A.   The Court Should Deny Lynk's Motion to Compel | 5 |
|     B.   The Court Should Quash Lynk's Subpoena | 10 |
|     C.   Alternatively, the Court Should Transfer the Motion to N.D. Ill. | 10 |
| V.   Conclusion | 11 |

SSI's Opposition and Cross-Motion
Misc. No. 5:23-mc-80018-VKD

- i -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beaver Cnty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.,*
No. 16-MC-80076-JSC, 2016 WL 7212308 (N.D. Cal. Dec. 13, 2016) ................................. 11

*Bushnell Hawthorne, LLC v. Cisco Sys., Inc.,*
Case No. 1:18-cv-760 (E.D. Va. Apr. 30, 2019) ........................................................................ 6

*Doe v. Kim,*
No. 21-MC-80101-CRB, 2021 WL 5447280 (N.D. Cal. Nov. 22, 2021) ...................... 4, 9, 10

*Friedman v. Old Republic Home Protection Co., Inc.,*
No. SACV 12-1833 AG, 2014 WL 12845131 (C.D. Cal. June 24, 2014) ............................... 5

*Fujikura Ltd. v. Finisar Corp.,*
No. 15-MC-80110-HRL, 2015 WL 5782351 (N.D. Cal. Oct. 5, 2015) ................................... 6

*GAF Building Materials Corp. v. Elk Corp. of Dallas,*
90 F.3d 479 (Fed. Cir. 1996) .................................................................................................... 7

*Halo Elecs., Inc. v. Pulse Elecs., Inc.,*
579 U.S. 93 (2016) ..................................................................................................................... 6

*HI.Q, Inc. v. ZeetoGroup, LLC,*
No. 22-cv-1440-LL-MDD, 2022 WL 17345784 (S.D. Cal. Nov. 29, 2022) ........................... 6

*In re DMCA § 512(h) Subpoena to Twitter, Inc.,*
No. 20-MC-80214-VC, 2022 WL 2205476 (N.D. Cal. June 21, 2022) ............................ 5, 11

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.,*
No. 09-CV-01967 CW NC, 2012 WL 4846522 (N.D. Cal. Aug. 7, 2012) ............................ 11

*LegalZoom.com v. Rocket Law. Inc.,*
No. 12-CV-00942 GAF, 2015 WL 12832823 (N.D. Cal. Mar. 23, 2015) ............................. 11

*Negotiated Data Sols. LLC v. Dell, Inc.,*
No. C09–80012, 2009 WL 733876 (N.D. Cal. Mar. 17, 2009) ........................................... 4, 7

*Nidec Corp. v. Victor Co. of Japan,*
249 F.R.D. 575 (N.D. Cal. 2007) .............................................................................................. 9

*Rockstar Consortium US LP v. Netstar Techs. LLC,*
No. 14-91322-FDS, 2015 WL 5972422 (D. Mass. Oct. 14, 2015) ........................................ 11

*Shopify (USA), Inc. v. Express Mobile, Inc.,*
No. 19-MC-80251-TSH, 2019 WL 5893235 (N.D. Cal. Nov. 12, 2019) ................................. 3

*State Indus., Inc. v. A.O. Smith Corp.,*
751 F.2d 1226 (Fed. Cir. 1985) ................................................................................................ 7

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*United States v. C.B.S., Inc.*,
    666 F.2d 364 (9th Cir. 1982) ..................................................................................................... 4

*Verinata Health, Inc. v. Sequenom, Inc.*,
    No. C 12–00865 SI, 2014 WL 2600367 (N.D. Cal. June 10, 2014) ......................................... 8

*Youtoo Technologies, LLC v. Twitter, Inc.*,
    No. 17-MC-80006-JSC, 2017 WL 431751 (N.D. Cal. Feb. 1, 2017) ................................. 5, 12

**Rules**

Fed. R. Civ. P. 26 ..................................................................................................................... 4, 5

Fed. R. Civ. P. 45 ................................................................................................................. passim

1    **I.    INTRODUCTION**

2    Lynk Labs, Inc.'s ("Lynk's") motion to compel should be denied and its subpoena quashed

3    because the deposition sought is irrelevant and cumulative of party discovery, and because

4    Samsung Semiconductor, Inc. ("SSI") twice offered exactly what the motion seeks—a corporate

5    witness for deposition.  Lynk rejected SSI's deposition offer and instead filed two motions, one in

6    this Court and one in the District of New Jersey, asking both courts to compel SSI to make the same

7    witness available for deposition.  The Court should not permit such vexatious tactics.  In the

8    alternative, the Court should transfer this matter to the court where the underlying litigation is

9    pending because the discovery sought from SSI is intertwined with a discovery dispute (and a

10    potential spoliation issue) arising from Lynk's failure to preserve documents.

11    First, Lynk's subpoena seeks third-party testimony from SSI about information that is

12    irrelevant and already available to the parties in the underlying litigation.  For example, Lynk's

13    subpoena primarily seeks testimony about a March 2017 meeting between Lynk's CEO and SSI,

14    which Lynk argues may support its claims of willful patent infringement in the underlying

15    litigation.  But this claim is facially implausible and legally unsupported because the March 2017

16    meeting occurred more than a year before any of the asserted patents even issued.  Indeed, none of

17    the corresponding patent applications were even filed by the March 2017 meeting.  Further, to the

18    extent Lynk's subpoena also seeks testimony, such as technical details, about certain products at

19    issue in the underlying litigation, this information has already been provided by, or could be

20    obtained from, the parties to the litigation, instead of third-party SSI.

21    Second, Lynk has taken no steps to avoid undue burden on SSI, as required by Fed. Civ. P.

22    45(d)(1).  Even though Lynk's subpoenas seek irrelevant information, SSI attempted to resolve this

23    dispute amicably by producing documents relating to the March 2017 meeting and offering a

24    witness for deposition.  To avoid the potential for multiple depositions, SSI asked Lynk to complete

25    related party discovery, including producing its own documents concerning Lynk's interactions

26    with SSI, before proceeding with the SSI deposition.  But Lynk refused this reasonable request;

27    instead, it insisted on proceeding with the SSI deposition before it produces Lynk's own related

28    documents.  This will undoubtedly hinder the parties' ability to fully examine the SSI witness and

1    may potentially necessitate a second deposition.

2          Given Lynk's failure to establish the relevance of its subpoena or justify its unreasonable

3    positions, the Court should deny Lynk's motion and quash Lynk's subpoena.  Further, because

4    Lynk failed to "take reasonable steps to avoid imposing undue burden or expense," as required by

5    Rule 45(d)(1), instead moving to compel something SSI already offered to provide, the Court "must

6    … impose an appropriate sanction."  Fed. R. Civ. P. 45(d)(1).  In the alternative, SSI respectfully

7    asks the Court to transfer Lynk's motion to the Northern District of Illinois, where the underlying

8    case is pending.

9    **II.    FACTUAL BACKGROUND**

10         Lynk's motion arises from *Samsung Electronics Co., Ltd., et al. v. Lynk Labs, Inc.*, No.

11   1:21-cv-02665 (N.D. Ill. 2021) (the "N.D. Ill. Litigation"), a patent declaratory judgment action

12   between plaintiffs/counter-defendants Samsung Electronics Co., Ltd. ("SEC") and Samsung

13   Electronics America, Inc. ("SEA") and defendant/counter-plaintiff Lynk Labs, Inc.  Through its

14   patent infringement counterclaims, Lynk accuses SEC and SEA of infringing ten asserted patents,

15   all of which issued on or after December 11, 2018.  Among the many categories of products accused

16   of infringement are ACOM LED lighting products, made by SEC.  The counter-defendants in the

17   N.D. Ill. Litigation—SEC and SEA—have already produced technical and financial documents and

18   provided a witnesses concerning the ACOM LED products.  Discovery in the N.D. Ill. Litigation

19   is ongoing, with the close of fact discovery not yet scheduled.

20         On October 3, 2022, Lynk served two sets of third-party subpoenas on SSI and SSI

21   employee Vince Feorenzo.  Lynk's deposition subpoenas primarily seek testimony regarding a

22   March 2017 meeting between Lynk's CEO Mike Miskin and SSI employee Mr. Feorenzo.  *See,*

23   *e.g.*, Dkt. 1-1 at 18 (Deposition Topic 1).  Lynk also seeks SSI testimony on technical and financial

24   information relating to the accused ACOM LED products.  *See id.* (Deposition Topics 2–4).

25         SSI objected to Lynk's subpoenas as irrelevant and unduly burdensome, among other

26   grounds.  Nevertheless, in response to the subpoenas, SSI searched for and produced documents

27   relating to the March 2017 meeting and SSI's interactions with Lynk.  *See* Ex. 1 at 10–11 (12/2/22

28   Email from H. Oh).  On January 9, 2023, SSI offered Mr. Feorenzo for deposition on February 9,

1   2023, conditioned on Lynk first completing related party discovery by producing its own

2   documents relating to the Lynk-SSI interactions.  Ex. 1 at 3 (1/9/23 Email from H. Oh).  Lynk did

3   not accepted SSI's offer.  On January 17, 2023, SSI again offered Mr. Feorenzo for deposition on

4   February 9, confirming both his status as SSI's corporate witness and a location for the deposition.

5   *Id*. at 1 (1/17/23 Email from H. Oh).  Lynk rejected SSI's offer and instead filed motions to compel

6   in this court and in New Jersey (where Mr. Feorenzo resides).  *See id.* at 1 (1/17/23 Email from G.

7   Summerfield); *Lynk Labs, Inc. v. Feorenzo*, Case No. 2:23-cv-00284 (D.N.J. filed Jan. 18, 2023).

8          In the meanwhile, Lynk admits that it has not yet produced all of ***its own documents*** relating

9   to the Lynk-SSI interactions—discovery sought by SEC and SEA in the N.D. Ill. Litigation to rebut

10  Lynk's meritless allegations.   Despite having produced a small handful of documents that it

11  perceives to be helpful to its position, Lynk claims that the remaining documents regarding the

12  Lynk-SSI interactions are unavailable due to a "ransomware attack [that] occurred sometime in

13  early December [2022]."  Ex. 2 at 2 (1/11/23 Email from D. Ghavimi); 7 (12/27/22 Email from D.

14  Ghavimi).  Counsel asked Lynk to explain why it "collected and produced documents Lynk wanted

15  to rely on prior to the ransomware attack but did not, at the same time, take any steps to collect and

16  preserve, let alone produce, the documents sought by [SEC/SEA]."  *Id.* at 2, 6 (1/13/23 and 12/30/22

17  Emails from M. Pensabene).  Lynk did not provide any explanation, but instead assured counsel

18  that it is taking actions to recover its documents.  *Id.* 2 at 1 (1/24/23 Email from K. Brown); 3–4

19  (1/10/23 Email from D. Ghavimi).  Notwithstanding this ongoing and unresolved deficiency in its

20  document production, Lynk insisted on proceeding with the third-party SSI deposition without

21  having produced its own documents relating to the Lynk-SSI interactions.

22  **III.   LEGAL STANDARD**

23          **A.  Motions to Compel or Quash Third-Party Subpoenas**

24          A party issuing a third-party subpoena "must take reasonable steps to avoid imposing undue

25  burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).  "[T]he Ninth

26  Circuit has long held that nonparties subject to discovery requests deserve extra protection from

27  the courts."  *Shopify (USA), Inc. v. Express Mobile, Inc.*, No. 19-MC-80251-TSH, 2019 WL

28  5893235, at *2 (N.D. Cal. Nov. 12, 2019).  This protection is especially necessary because non-

1    party witnesses are "powerless to control the scope of litigation and discovery, and should not be

2    forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party."

3    *United States v. C.B.S., Inc.*, 666 F.2d 364, 371–72 (9th Cir. 1982).

4           In considering a motion to compel third-party deposition testimony, Courts first consider

5    whether the discovery sought "is relevant to any party's claim or defense." *Negotiated Data Sols.*

6    *LLC v. Dell, Inc.*, No. C09–80012, 2009 WL 733876, at *2 (N.D. Cal. Mar. 17, 2009) (citing Fed.

7    R. Civ. P. 26(b)).  Beyond the threshold question of relevance, Courts also consider whether "the

8    discovery sought is unreasonably cumulative or duplicative or can be obtained from a source that

9    is more convenient, less burdensome or less expensive," "the party seeking discovery has had ample

10   opportunity to obtain the information through discovery," and "the burden or expense of the

11   discovery sought outweighs its likely benefit, considering the needs of the case, the amount in

12   controversy, the parties' resources, the importance of the issues at stake, and the importance of the

13   discovery in resolving those issues." *Id.*

14          The factors for a motion to quash are nearly identical—"[a] court determining the propriety

15   of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the

16   potential hardship to the party subject to the subpoena."  *Doe v. Kim*, No. 21-MC-80101-CRB,

17   2021 WL 5447280, at *2 (N.D. Cal. Nov. 22, 2021)); *Negotiated Data,* 2009 WL 733876, at *4

18   (considering same factors as motion to compel for motion to quash).  When "a subpoena recipient

19   moves to quash after lodging a written objection to the subpoena, the motion to quash is timely so

20   long as it is filed within a reasonable time after the conclusion of informal efforts to resolve the

21   objections." *In re DMCA § 512(h) Subpoena to Twitter, Inc*., No. 20-MC-80214-VC, 2022 WL

22   2205476, at *2 n.2 (N.D. Cal. June 21, 2022) (citing *Friedman v. Old Republic Home Protection*

23   *Co., Inc*., No. SACV 12-1833 AG, 2014 WL 12845131, at *2 (C.D. Cal. June 24, 2014)).

24          **B.  Motion to Transfer**

25          "When the court where compliance is required did not issue the subpoena, it may transfer a

26   motion under this rule to the issuing court if the person subject to the subpoena consents or if the

27   court finds exceptional circumstances."  Fed. R. Civ. P. 45(f).  "[T]ransfer may be warranted in

28   order to avoid disrupting the issuing court's management of the underlying litigation, as when that

court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." Fed. R. Civ. P. 45(f) advisory committee notes (2013). Where "the person subject to the subpoena consents," the compliance court typically "grant[s] the transfer request." *See Youtoo Technologies, LLC v. Twitter, Inc.*, No. 17-MC-80006-JSC, 2017 WL 431751, *1–2 (N.D. Cal. Feb. 1, 2017) (noting that this issue is rarely disputed and collecting contested cases where transfers were granted).

## IV.    ARGUMENT

### A.  The Court Should Deny Lynk's Motion to Compel

Lynk fails to establish, or even address, the relevance of the requested testimony, and ignores all the other factors considered for a motion to compel.[1]  Unsurprisingly, all factors favor denying Lynk's motion.

### 1.    Lynk's Subpoena Seeks Irrelevant Information

"[T]he party issuing the subpoena must demonstrate the discovery sought is relevant." *Fujikura Ltd. v. Finisar Corp.*, No. 15-MC-80110-HRL, 2015 WL 5782351, at *3 (N.D. Cal. Oct. 5, 2015); *see also* Fed. R. Civ. P. 26(b)(1).  Lynk fails to meet this basic threshold requirement.

The main subject of the deposition testimony sought by Lynk is the March 2017 meeting between Lynk CEO Mike Miskin and SSI employee Vince Feorenzo.  During meet-and-confers, Lynk argued that the March 2017 meeting is relevant to its claims of willful infringement against two different entities—SEC and SEA—who are parties to the underlying N.D. Ill. Litigation.  But willful infringement requires "intentional and knowing" acts by an accused infringer.  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016).  SSI is not accused of patent infringement and its knowledge is irrelevant to whether SEC or SEA willfully infringed.[2]

---

[1] Lynk's reliance on *HI.Q, Inc. v. ZeetoGroup*, LLC, No. 22-cv-1440-LL-MDD, 2022 WL 17345784 (S.D. Cal. Nov. 29, 2022) is misplaced. *See* Dkt. 1 at 3–4. *HI.Q* explains that a responding party may not "simply … serve objections to any subpoena and avoid compliance." *HI.Q*, 2022 WL 17345784  at *6.  Here, SSI did not simply stand on its objections; it offered its witness for deposition multiple times, and is now cross-moving to quash.  More importantly, *HI.Q* does not absolve Lynk from its failure to apply the appropriate test for a motion to compel.

[2] SSI, SEA, and SEC are different corporations; the knowledge of one corporation cannot be imputed to another. *See, e.g.*, *Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*, No. 1:18-cv-760, Dkt. 92 at *4 (E.D. Va. Apr. 30, 2019) (dismissing willful infringement claim because a subsidiary entity's "knowledge cannot be imputed to [the parent entity] defendant").

1    Further, as SSI explained in its objections, the March 2017 meeting is irrelevant because

2    "the earliest Patent-in-Suit issued on December 11, 2018." Dkt. 1-2 at 25.  "Patent rights are created

3    only upon the formal issuance of the patent." *GAF Building Materials Corp. v. Elk Corp. of Dallas*,

4    90 F.3d 479, 483 (Fed. Cir. 1996).  Consequently, all alleged acts of patent infringement by SEC

5    and SEA occurred on or after December 2018—over 20 months after the March 2017 meeting.

6    Indeed, none of the patent applications that issued as the patents asserted in the N.D. Ill. Litigation

7    were even filed by the March 2017 meeting.  And, regardless, willful infringement cannot be

8    premised on knowledge of pending patent applications.  *See State Indus., Inc. v. A.O. Smith Corp*.,

9    751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe a patent, the patent must exist and one

10   must have knowledge of it.  A 'patent pending' notice gives one no knowledge whatsoever.").

11   Thus, Lynk's claim that the March 2017 meeting is relevant to its willful infringement claim against

12   two different parties is simply implausible.

13       Though not the focus, Lynk's subpoena also seeks testimony concerning "[t]he subject

14   matter of all requests for production" in the subpoena.  This includes technical and financial

15   information regarding the ACOM LED products at issue in the N.D. Ill. Litigation.  However, SEC

16   and SEA, the parties to that litigation, have already produce documents and witnesses on this

17   subject matter.  Indeed, as the manufacturer of the accused ACOM LED products, SEC is the best,

18   if not only, source for technical information about those products.  To the extent Lynk seeks

19   information from SSI beyond that already produced by SEC and SEA, it has failed to identify such

20   information, let alone establish its relevance to the underlying N.D. Ill. Litigation.

21

22                    **2.    Lynk's Requests are Unreasonably Cumulative, Duplicative, and
                             Obtainable from More Convenient Sources**

23       Lynk's deposition requests are "unreasonably cumulative or duplicative" and the

24   information sought is obtainable from "more convenient, less burdensome or less expensive"

25   sources, including the parties to the underlying N.D. Ill. Litigation.  *See Negotiated Data Sols.*,

26   2009 WL 733876 at *2.

27       Any discovery from SSI relating to Lynk's willful infringement allegations against SEC

28   and SEA would be cumulative of party discovery.  Lynk's CEO, Mike Miskin, attended the March

2017 meeting and, thus, has firsthand information relating to that meeting.  If Lynk's theory is that SEC or SEA gained information relating to Lynk's yet-to-be-filed patent applications from SSI as a result of the March 2017 meeting (which is factually and legally implausible for reasons explained above), Lynk can seek that discovery from SEC and SEA directly.  Indeed, Lynk has already sought discovery from SEC and SEA about their pre-suit investigation of Lynk's patents, and SEC and SEA already provided—and Lynk deposed—a Rule 30(b)(6) witness on topics including pre-suit knowledge of Lynk's patents.  *See* Ex. 3 at 6–7 (Topics 2 and 12); Ex. 4 at 1 (designation of Hye Jin Kim).

In addition, SSI already produced responsive documents in its possession regarding the March 2017 meeting.  None of those documents mention any of the patents asserted in this case— because those patents would not have issued for at least 20 months.  Thus, whatever information Lynk hopes to gain from the deposition of SSI's witness will be duplicative of SSI's produced documents, knowledge of Lynk's own witness, the documents within Lynk's possession, and the witnesses and documents produced by SEC and SEA.  *See Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12–00865 SI, 2014 WL 2600367, at *2 (N.D. Cal. June 10, 2014) (quashing a deposition subpoena for seeking information cumulative with produced documents).

Lynk's request for SSI testimony regarding the ACOM LED products is also unreasonably cumulative of information that has been provided or is obtainable through party discovery.  SEC and SEA already produced technical and financial documents, as well as a knowledgeable corporate witness, regarding the ACOM LED products.  *See* Ex. 3 at 7–9 (Topics 5, 9, 14); Ex. 4 at 2 (designation of Sangcheol Bong).  Lynk does not explain what additional, non-cumulative, relevant information it hopes to gain through a deposition of SSI's employee that it did not, and could not, obtain directly from the parties to the N.D. Ill. Litigation.

Lastly, Lynk's requests for testimony regarding document authenticity and SSI's response to the subpoena are similarly unreasonable.  *See* Dkt. 1-1 at 18 (Deposition Topics 3–4).  SSI has already offered to authenticate the documents it produced through a written declaration—a far more convenient method than a deposition.  Ex. 1 at 10–11 (12/2/22 Email from H. Oh).

1

### 3.    Lynk Had Ample Opportunity to Obtain the Requested Information Through Party Discovery

2

3      As explained above (Section IV.A.2), Lynk has had more than ample opportunity to inquire

4   into SEC's and SEA's pre-suit knowledge of the patents asserted in the underlying N.D. Ill.

5   Litigation, and SEC and SEA have already provided documents and deposition testimony relating

6   to the ACOM LED products at issue in that litigation.  To the extent Lynk believes that discovery

7   into these issues is incomplete, Lynk can, and should, seek that information directly from SEC and

8   SEA, rather than from third-party SSI.  *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575,

9   577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought

10  are in possession of the party defendant.").

11

### 4.    The Burden and Expense of this Discovery Outweigh Any Likely Benefit

12     For the reasons set forth in Sections IV.A.1 and 2, all information Lynk seeks from an SSI

13  deposition is irrelevant or has already been provided by (or is available from) the parties to the

14  underlying N.D. Ill. Litigation.  In contrast, the burden imposed by a deposition of SSI's executive

15  and corporate representative, Mr. Feorenzo, is significant.  Lynk has already tied up Mr. Feorenzo,

16  a vice-president of SSI, and burdened SSI's in-house and outside counsel who, in an attempt to

17  provide discovery in good faith (and to show Lynk that there was no issue worth pursuing), searched

18  for, collected, and produced documents responsive to Lynk's subpoenas.  Granting Lynk's motion

19  would require Mr. Feorenzo and SSI's counsel to expend additional time and resources to prepare

20  for, and attend, a deposition, all to be questioned on irrelevant and cumulative issues.  Given the

21  total lack of relevance, the balance factor can only weigh in SSI's favor.  *Kim*, 2021 WL 5447280

22  at *2 ("[I]f the sought-after documents are not relevant, nor calculated to lead to the discovery of

23  admissible evidence, then any burden whatsoever imposed would be by definition undue.").

24

25

### 5.    The Court Should Impose Sanctions Because Lynk Has Failed To Take Reasonable Steps To Minimize Burden

26     Rule 45(d)(1) requires a party issuing a third-party subpoena to "take reasonable steps to

27  avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P.

28  45(d)(1).  "The court for the district where compliance is required ***must enforce this duty and***

1    ***impose an appropriate sanction***—which may include lost earnings and reasonable attorney's

2    fees—on a party or attorney who fails to comply." *Id*. (emphasis added).

3        Lynk has failed to take ***any*** reasonable steps to minimize the burden on SSI. To the contrary,

4    it refused to exhaust party discovery before requesting third-party discovery, it refused to produce

5    its own documents (and likely failed to preserve documents), it refused to even respond to SSI's

6    proposed deposition date, and it refused to engage in any meaningful meet-and-confer regarding

7    deposition scheduling.

8        For example, on January 17, 2023, the day before Lynk filed its motion, SSI proposed a

9    date and location for Mr. Feorenzo's deposition. *See* Ex. 1 a 1 (1/17/23 Email from H. Oh). Lynk

10   did not accept the date or otherwise meet and confer regarding SSI's offered deposition. Instead,

11   in response to that very email, Lynk declared an impasse as to whether SSI would produce a witness

12   notwithstanding the open discovery issues concerning Lynk's failure to produce its own related

13   documents. Ex. 1 at 2 (1/17/23 Email from G. Summerfield). Less than a day later, before SSI

14   even had a chance to respond, Lynk filed its motion. Lynk's unilateral declaration of an impasse

15   and filing of a motion after SSI offered a deposition witness, date, and location—when SSI was

16   clearly cooperating—is at odds with Rule 45's requirement to minimize undue burden.[3] Thus,

17   Lynk's unreasonable actions warrant the imposition of sanctions. *See Beaver Cnty. Employees'*

18   *Ret. Fund v. Tile Shop Holdings, Inc.*, No. 16-MC-80076-JSC, 2016 WL 7212308, at *4 (N.D. Cal.

19   Dec. 13, 2016) (granting sanctions against a party that "imposed an undue burden" on a non-party);

20   *LegalZoom.com v. Rocket Law. Inc*., No. 12-CV-00942 GAF, 2015 WL 12832823, at *2 (N.D. Cal.

21   Mar. 23, 2015) (criticizing subpoena-issuing party for seeking third-party discovery that include

22   "significant materials already produced by the party defendant" and noting that "[u]nder Rule

23   45(d)(1), the Court must impose an appropriate sanction on a party or attorney responsible for

24   issuing a subpoena that violates Rule 45"); *In re NCAA Student-Athlete Name & Likeness Licensing*

25   *Litig*., No. 09-CV-01967 CW NC, 2012 WL 4846522, at *1 (N.D. Cal. Aug. 7, 2012) ("sanction is

26   

27   ───────────────
     [3] For example, to minimize the potential need for multiple depositions of an SSI witness, the SSI
     deposition could have been scheduled after Lynk completed its investigation into the documents

28   requested from Lynk by parties SEC and SEA related to the Lynk-SSI interactions. Lynk refused
     and elected to instead file two motions, one in this Court and one in the District of New Jersey.

1    merited" where the subpoena-issuing party "did not take reasonable steps at compromise and ended

2    the meet-and-confer process prematurely before filing the motions to compel"); *Rockstar*

3    *Consortium US LP v. Netstar Techs. LLC*, No. 14-91322-FDS, 2015 WL 5972422, at *6 (D. Mass.

4    Oct. 14, 2015) (awarding sanctions where subpoenas were unduly burdensome because information

5    sought was available through party discovery).

6        **B.  The Court Should Quash Lynk's Subpoena**

7        For the same reasons stated above in Section IV.A, SSI renews its objections to Lynk's

8    subpoena and cross-moves to quash.  SSI respectfully submits that the Court should quash Lynk's

9    subpoena because it seeks information that is irrelevant and obtainable from more convenient

10   sources.  SSI's cross-motion to quash is timely because it is made "within a reasonable time after

11   the conclusion of informal efforts to resolve the objections."  *See In re DMCA § 512(h) Subpoena*

12   *to Twitter*, 2022 WL 2205476, at *2 n.2.  Here, SSI offered the requested deponent as part of its

13   efforts to resolve the objections just one day before Lynk filed its motion to compel.  Thus, SSI's

14   cross-motion to quash is filed within a reasonable time after the conclusion of its informal efforts

15   to resolve this dispute.

16       **C.  Alternatively, the Court Should Transfer the Motion to N.D. Ill.**

17       As an alternative to the relief requested above, SSI respectfully requests the Court to transfer

18   this matter to the subpoena-issuing court: the Northern District of Illinois, where the underlying

19   litigation is pending.  "When the court where compliance is required did not issue the subpoena, it

20   may transfer a motion under this rule to the issuing court if the person subject to the subpoena

21   consents or if the court finds exceptional circumstances."  Fed. R. Civ. P. 45(f).

22       There are at least two compelling reasons why transfer should be granted.  First, Lynk has

23   filed two motions to compel in two separate courts seeking the deposition of the same person.

24   Transferring both motions to the Northern District of Illinois would eliminate the need to have

25   multiple courts address the same issue and avoid any possible inconsistency between the two courts.

26   Second, the discovery sought from SSI is intertwined with discovery disputes in the N.D. Ill.

27   Litigation, including Lynk's refusal to produce its documents relating to the Lynk-SSI interactions

28   and Lynk's potential spoliation of this evidence.  Thus, a transfer would allow the Northern District

1    of Illinois to resolve these discovery disputes together and "avoid disrupting the issuing court's

2    management of the underlying litigation." Fed. R. Civ. P. 45(f) advisory committee notes (2013).

3         As the Court explained in *Youtoo Technologies*, transferring a motion over a subpoena to

4    the subpoena-issuing court is rarely disputed where "the person subject to the subpoena consents."

5    2017 WL 431751, *1–2. And even when it is disputed, courts generally grant such motions over

6    the objection of the party issuing the subpoena. *See id.* (collecting cases). Thus, because SSI

7    consents to the transfer, and because a transfer would provide judicial efficiency and avoid

8    inconsistent results, the Court should transfer this matter to the Northern District of Illinois.

9    **V.    CONCLUSION**

10        For the foregoing reasons, SSI respectfully asks the Court to deny Lynk's motion to compel,

11   quash Lynk's subpoenas, and impose costs on Lynk under Fed. Civ. P. 45(d)(1). SSI alternatively

12   asks the Court to transfer this matter to the U.S. District Court for the Northern District of Illinois.

13   February 1, 2023                          Respectfully submitted,

14                                             */s/ Darin W. Snyder*
                                               Darin W. Snyder (Cal. Bar No. 136003)
15                                             dsnyder@omm.com
                                               Rui Li (Cal. Bar No. 320332)
16                                             rli@omm.com
                                               **O'MELVENY & MYERS LLP**
17                                             Two Embarcadero Center, 28th Floor
                                               San Francisco, CA 94111
18                                             Telephone: 415-984-8700
                                               Facsimile: 415-984-8701
19
                                               Xin-Yi Zhou (Cal. Bar No. 251969)
20                                             vzhou@omm.com
                                               **O'MELVENY & MYERS LLP**
21                                             400 S. Hope Street, 18th Floor
                                               Los Angeles, CA 90071
22                                             Telephone: 213-430-6000
                                               Facsimile: 213-430-6407
23
                                               Hana Oh (Cal. Bar No. 300846)
24                                             hoh@omm.com
                                               **O'MELVENY & MYERS LLP**
25                                             610 Newport Center Drive, 17th Floor
                                               Newport Beach, CA 92660
26                                             Telephone: 949-823-6900
                                               Facsimile: 949-823-6994
27
                                               ***Attorneys for Respondent Samsung***
28                                             ***Semiconductor, Inc.***